Town of Billerica *vs.* Andrew T. Card, Sr.; Peter M. Coppinger[1] & others,[2] defendants-in-counterclaim.

No. 05-P-14.

Suffolk. December 13, 2005. - July 7, 2006.

Present: Lenk, Brown, & Green, JJ.

*Real Property,* Agricultural or horticultural use, Right of first refusal, Option. *Municipal Corporations,* Acquisition of real estate, Notice to municipality. *Unjust Enrichment.*

The judge in a civil action properly concluded that a letter sent by the defendant, the owner of agricultural land, to the plaintiff town did not constitute valid notice under G. L. c. 61A, § 14, of an intent to convert that land to nonagricultural use, where the letter was not sent via certified mail; further, the judge properly concluded that a later letter that met the statutory notice requirements vested an option in the town to purchase the land as soon as the town received the notice, and that any purported subsequent withdrawal of the notice was of no effect. [665-669]

Where the owner of agricultural land sent notice to a town of an intent to convert the land to nonagricultural use, and included in that notice an independent appraisal of the property's value, the town's subsequent purchase of the property for the appraisal value did not unjustly enrich the town. [669-671]

Civil action commenced in the Land Court Department on July 5, 2001.

The case was heard by *Alexander H. Sands,* J., on motions for summary judgment.

*Francis A. DiLuna (Elizabeth Kowal* with him) for the defendant.

*Elaine M. Lucas* for town of Billerica & others.

Lenk, J. The plaintiff, the town of Billerica (town), sought

---

[1]Individually and as a member of the board of selectmen of Billerica.

[2]Michael S. Rosa, Robert M. Correnti, Ellen Day Rawlings, and James F. O'Donnell, Jr., individually and as members of the board of selectmen of Billerica; and the town of Billerica.

a declaratory judgment to the effect that a certain notice of intent to convert agricultural land, owned by the defendant Andrew T. Card, Sr., had been sent to the town by Card pursuant to G. L. c. 61A and had thereby vested in the town an option to purchase such land; Card counterclaimed. Summary judgment entered for the town and Card appeals. We affirm.

*Background.* Card owns 50.78 acres of land on Nashua Road in the town; forty-nine of those acres were classified as agricultural land pursuant to G. L. c. 61A, entitling Card to a reduced tax assessment on the acres so classified. Card informed the town by letter dated December 30, 1999 (1999 letter), that he wished to remove 15.85 acres from c. 61A classification. He asserts that he delivered the 1999 letter by hand to the town's board of selectmen and mailed copies to the board of assessors, the planning board, and the conservation commission. It is undisputed that Card failed to send the 1999 letter by certified mail as required by G. L. c. 61A, § 14.

Richard Scanlon, the town's principal assessor, responded in a letter dated January 6, 2000, requesting that Card provide an impartial appraisal of the property and stating his opinion that, without such an appraisal, the letter was insufficient to constitute proper notice under the law. In a January 6, 2000, meeting with Scanlon, Card discussed a possible resubmission of the 1999 letter in order to comply with G. L. c. 61A. He subsequently sent to all relevant parties, via certified mail, a letter dated June 23, 2000 (2000 letter), in which he requested to remove 14.51 acres from c. 61A classification[3]; the letter included an appraisal dated May 27, 2000, putting the fair market value of the land at $405,000. In a July 25, 2000, written response to Card's request for a calculation of his "roll-back" taxes,[4] the board of assessors included a State tax form indicating that the "full value" of the property for fiscal year 2000 was assessed at $540,000.

---

[3]There is no indication in the record before us as to why Card sought in the 2000 letter to convert 14.51 acres as opposed to the 15.85 acres he had sought to convert in the 1999 letter.

[4]"Roll-back taxes are the difference between the property taxes actually paid under c. 61A and what would have been paid if the land had been assessed outside of c. 61A for the current tax year and up to the four preceding tax years." *Sudbury* v. *Scott*, 439 Mass. 288, 295 n.8 (2003).

At a public meeting held on August 7, 2000, the board of selectmen voted to exercise their option under G. L. c. 61A, § 14, to purchase the property at Card's appraised value of $405,000. Card objected to that figure as being too low given the board of assessors' assessment of the property at $540,000. Selectman Robert Correnti indicated that Card could probably withdraw his notice of intent, and Card stated that he chose to do just that; Card later confirmed this verbal withdrawal in a letter dated August 11, 2000. Disregarding the letter, the selectmen executed a "Notice of Exercise of Option to Purchase," which was recorded on September 8, 2000; this was subsequently approved by the town on October 3, 2000, and $405,000 was allocated for the purchase of the property. On April 24, 2001, Card filed with the town a second appraisal valuing the property at $700,000.

The town sought declaratory relief to determine the validity of the 2000 letter; there followed a flurry of counterclaims and amended counterclaims, a motion to dismiss, and the town's motion for summary judgment. The trial judge ordered summary judgment for the town, concluding that (1) the 1999 letter was not valid; (2) the 2000 letter was valid; (3) Card did not have the right to withdraw the 2000 letter; and (4) the town's option to purchase was valid and properly exercised.

*Discussion.* On appeal, Card argues that the judge erred in ruling that the 1999 letter was invalid, and that Card did not have the right to withdraw the 2000 letter. In addition, he claims that the town was unjustly enriched when permitted to purchase the property for less than its full and fair market value.

a. *The statutory requirements of G. L. c. 61A, § 14.*[5] Under G. L. c. 61A, agricultural land is assessed at a rate significantly

---

[5]General Laws c. 61A, § 14, as amended through St. 1987, c. 95, § 3, provides, in pertinent part:

> "Land which is valued, assessed and taxed on the basis of its agricultural or horticultural use under an application filed and approved pursuant to this chapter shall not be sold for or converted to residential, industrial or commercial use while so valued, assessed and taxed unless the city or town in which such land is located has been notified of intent to sell for or convert to such other use; provided, however, that the discontinuance of the use of such land for agricultural or horticultural purposes shall not be deemed a conversion. . . . For a

lower than its value under the highest and best use standard on which real property is typically assessed. *Sudbury* v. *Scott*, 439 Mass. 288, 294 (2003). In return for a lower assessment and lower taxes, the owner must agree that the municipality will have the right of first refusal should the property be sold or converted to nonagricultural use. *Id.* at 295. When the town receives a notice of an intended sale or conversion, the right of first refusal ripens into an option either to meet a bona fide purchase offer or, in the case of conversion, to purchase the property at full and fair market value; such option must be exercised within 120 days following the notice. *Id.* at 297-298. Central to the matter before us is whether the 1999 letter or the 2000 letter served as the notice of intent to the town for the purposes of ascertaining the town's option period.

b. *The 1999 letter.* Card contends that the 1999 letter, received by all relevant parties in the first week of January, 2000, constituted valid notice; the town's failure to exercise its option within 120 days, he maintains, extinguished that right.[6] The town's response is two-fold: it claims that (1) because the letter

period of one hundred twenty days subsequent to such notification, said city or town shall have, in the case of an intended sale, a first refusal option to meet a bona fide offer to purchase said land, or, in the case of an intended conversion not involving sale, an option to purchase said land at full and fair market value to be determined by impartial appraisal. . . . Such notice of intent shall be sent by the landowner via certified mail to the mayor and city council of a city, or to the board of selectmen of a town, to its board of assessors and to its planning board and conservation commission, if any, and said option period shall run from the day following the latest date of deposit of any of such notices in the United States mails. No sale or conversion of such land shall be consummated unless and until either said option period shall have expired or the landowner shall have been notified in writing by the mayor or board of selectmen of the city or town in question that said option will not be exercised. Such option may be exercised only by written notice signed by the mayor or board of selectmen, mailed to the landowner by certified mail at such address as may be specified in his notice of intention and recorded with the registry of deeds, within the option period."

[6]Card further argues that the town erroneously required the notice to include an appraisal, a mistake for which he should not be held responsible. In its motion for summary judgment, the town maintained that the 1999 letter was insufficient notice because it did not include an appraisal. There is no statutory requirement, however, that an appraisal exist at the time of the notice of intent. See discussion, *infra*.

was not sent by certified mail, it did not satisfy a statutory prerequisite for valid notice; and (2) Card is, in any event, estopped from asserting the town's failure to exercise timely its option since the town reasonably relied, to its detriment, on Card's verbal representation that he intended to resubmit notice in order to comply with G. L. c. 61A, § 14. See *Rotundi* v. *Arbella Mut. Ins. Co.*, 54 Mass. App. Ct. 906 (2002). The town's first reason suffices.

"[P]ublic interest requires 'strict enforcement of the statutory notice requirements.' " *Calnan* v. *Planning Bd. of Lynn*, 63 Mass. App. Ct. 384, 390 (2005), quoting from *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555, 558 (1986). We are to construe a statute so that effect is given to all of its provisions. *Adoption of Marlene*, 443 Mass. 494, 500 (2005). See *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 397 Mass. 734, 740 (1986) ("It is the function of this court to construe [G. L. c. 61A, § 14], as written, and an event or contingency for which no provision has been made does not justify judicial legislation").

General Laws c. 61A was enacted "to preserve and protect the agricultural use of land . . . by requiring notice." *Sudbury* v. *Scott*, 439 Mass. at 301. "Where, as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the Legislature." *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 60-61 (2002). The statutory requirement that notice be sent by certified mail ensures that all parties will receive a notice of intent reflecting a readily ascertainable date of mailing, which sets the option period running. To construe the statute otherwise would permit a degree of imprecision as to the start of the 120-day option period, which the Legislature deemed undesirable. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 355 (1973).

c. *The 2000 letter.* Card argues that he had a statutory right to withdraw the 2000 notice of intent. As support therefor he points to G. L. c. 61A, § 6, which states that an application seeking c. 61A classification may not be withdrawn; had the Legislature intended such a prohibition regarding notice of intent to sell or convert, Card contends, it would have inserted similar language in § 14. In view of the different functions served by the two sections, we are not persuaded that Card is correct.

General Laws c. 61A, § 6, addresses the mechanism by which a landowner obtains c. 61A classification; § 14 provides for a municipality's right of first refusal or option to purchase land. Upon notice under § 14 of a bona fide offer to purchase, " 'a right of first refusal ripens into an option to purchase according to [the] terms' of the offer." *Franklin* v. *Wyllie*, 443 Mass. 187, 195 (2005), quoting from *Greenfield Country Estates Tenants Assn.* v. *Deep*, 423 Mass. 81, 89 (1996). See *Sudbury* v. *Scott*, 439 Mass. at 297-298 ("Under G. L. c. 61A, § 14, a town's right of first refusal ripens into an option to purchase when the town receives notice of an intended sale of land under c. 61A for a nonagricultural use"). The option vests in the town as soon as it receives a notice of intent, and any purported subsequent withdrawal of the notice can have no effect. See *Stapleton* v. *Macchi*, 401 Mass. 725, 729 n.6 (1988) ("An option is simply an irrevocable offer creating a power of acceptance in the optionee"). In like manner, the town's receipt of notification of a landowner's intended conversion not involving a sale triggered the town's 120-day option to purchase the land at full and fair market value. "Common-law principles apply to a right of first refusal created by statute." *Sudbury* v. *Scott*, 439 Mass. at 297 n.12. The option having been triggered by the notice, Card could not thereafter unilaterally take back rights that had already irrevocably vested in the town, at least in the absence of a statutory provision expressly permitting such withdrawal.[7]

d. *Unjust enrichment.* Card claims that the town would be unjustly enriched were it to be permitted to purchase the property for the May, 2000, appraisal value of $405,000, despite the fact that it was assessed by the town on July 7, 2000, at $540,000, and later appraised at Card's behest in April, 2001, at $700,000.

Section 14 of G. L. c. 61A provides, in pertinent part, that "[f]or a period of one hundred twenty days subsequent to such

---

[7]Card's argument that he was led to believe by Correnti that he could withdraw his notice is of little moment. Members of a municipal board cannot act separately as individuals, and Correnti's opinion accordingly did not reflect a formal decision by, or binding upon, the board of selectmen. *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, 605 (1935).

notification, said city or town shall have, in the case of an intended sale, a first refusal option to meet a bona fide offer to purchase said land, or, in the case of an intended conversion not involving sale, an option to purchase said land at full and fair market value to be determined by impartial appraisal."

The two situations are quite different with respect to valuation. When there is an intended sale to a bona fide purchaser, the purchase price is disclosed at the time notice to the town is given; it is that price that the town must decide whether it will meet. Where there is to be a conversion, on the other hand, all that the statute requires is that the parcel intended for conversion be identified; the town has the option then to purchase it for "full and fair market value to be determined by impartial appraisal." The statute is silent as to when the appraisal is to be made — whether at the time of giving notice, during the 120-day window within which the town can exercise its options or, for that matter, at some later date.

We take the "to be determined" language in G. L. c. 61A, § 14, as suggesting that the appraisal may be done following the notice. Hence, the notice itself need not contain an appraisal. Mindful, however, that the statute must be construed "in a manner that will not frustrate or impair a town's right of first refusal," *Franklin* v. *Wyllie*, 443 Mass. at 196, it seems plain that once in receipt of the notice, the town cannot be expected to decide whether it is in a position to exercise its option to buy the subject land without first knowing what it will have to pay to do so. See *Roy* v. *George W. Greene, Inc.*, 404 Mass. 67, 69-71 (1989). Hence, we think the sensible reading of § 14 is that the impartial appraisal envisioned by the statute will ordinarily be obtained well within the 120-day option period. See *Franklin* v. *Wyllie, supra.*

When Card sent the 2000 letter giving notice of the intended conversion, he included an appraisal valuing the land at $405,000.[8] After notifying Card that it was exercising its right of first refusal, the town twice informed Card (on August 16

---

[8]Card does not suggest that the 2000 appraisal was anything other than impartial; he contends only that the town would be unjustly enriched should it acquire the land at $405,000. Card also claims that the town knew or should have known that the 2000 appraisal was low when it sent its July 7, 2000, tax

and September 6, 2000) that, should he believe that the $405,000 appraisal did not constitute the " 'impartial appraisal' envisioned by the statute," he should contact the town's principal assessor "so that a new appraisal [could] be ordered." Card apparently did not do so, preferring instead to maintain that he had withdrawn his notice of intention to convert the land. Then, more than six months after town meeting voted to appropriate $405,000 to purchase the property, Card submitted an appraisal dated April 24, 2001, which he had apparently unilaterally commissioned. This appraisal valued the land at $700,000. In the circumstances, we discern no unjust enrichment in the town's purchase of the land at the $405,000 appraised value. To allow Card to substitute a second appraisal after expiration of the 120-day period for the town's exercise of its right of first refusal, and well after the town had made an informed decision, based on the previously submitted appraisal, to exercise the option, would impair the orderly administration of the procedures envisioned by the Legislature for towns to exercise their right of first refusal. See *Roy* v. *George W. Greene, Inc.*, 404 Mass. at 69-71.

*Judgment affirmed.*

---

evaluation form designed to calculate roll-back taxes reflecting an assessed value of $540,000.