NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13843

   WATERMARK LLC  vs.  R H BENEA CRANBERRY CO., INC., & others.[1]


        Plymouth.     February 4, 2026. - June 12, 2026.

   Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
                 Dewar, & Wolohojian, JJ.


Real Property, Agricultural or horticultural use, Sale, Right of
     first refusal, Specific performance.  Notice.  Municipal
     Corporations, Notice to municipality.  Evidence, Intent.
     Intent.  Declaratory Relief.  Practice, Civil, Declaratory
     proceeding, Summary judgment.  Words, "That," "The rest."



     Civil action commenced in the Superior Court Department on
February 18, 2022.

     The case was heard by Claudine A. Cloutier, J., on motions
for summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Jason M. Rawlins for the plaintiff.
     Jeffrey T. Blake (Matthew T. Skydel also present) for town
of Duxbury & another.
     Joshua M. D. Segal (Brendan P. Slean also present) for R H
Benea Cranberry Co., Inc.

---

     [1] Town of Duxbury and board of selectmen of Duxbury; and
Duxbury affordable housing trust, intervener.

Robert W. Galvin, for the intervener, was present but did not argue.

David S. Mackey, Sean Grammel, & Sean P. O'Neill, for town of Hopedale, amicus curiae, submitted a brief.

WOLOHOJIAN, J.  Watermark LLC (Watermark) entered into a contract to purchase an approximately twenty-five acre cranberry bog (property) in Duxbury (town) that was assessed and taxed as agricultural land under G. L. c. 61A.  In connection with the sale, Watermark informed the seller, R H Benea Cranberry Co., Inc. (RH Benea), that Watermark did not intend to keep the property in c. 61A and that it planned "to subdivide off [two] 40,000 square-foot lot[s] plus or minus and keep the rest agricultural."  With Watermark's knowledge and assent, RH Benea included this language in the notice of intent to sell sent to the town pursuant to G. L. c. 61A, § 14, which also informed the town of the terms of the proposed sale and solicited the town's waiver of its statutory right of first refusal.  See G. L. c. 61A, § 14.  Watermark subsequently changed tack and told the town that it did not at that point intend to use the property for anything other than agriculture.  Watermark also, together with RH Benea, sent a letter purporting to withdraw the notice of intent.  The town rejected the attempted withdrawal and decided to exercise its option to purchase the property.  Watermark then filed this suit seeking specific performance and declaratory relief and, on cross motions for summary judgment, a

Superior Court judge entered judgment against Watermark.  The judge concluded that the notice of intent was sufficient to trigger the town's right of first refusal, and that the town's right therefore ripened into an irrevocable option precluding withdrawal of the notice.  We affirm.[2]

1.  Background.  We summarize the undisputed documentary record, reserving certain additional factual details for our later discussion.

On January 11, 2021, Watermark entered into a contract to purchase the property from RH Benea for $462,500.  The property contained cranberry bogs, and it had historically been classified and taxed by the town as agricultural land under G. L. c. 61A.[3,4]  Explicitly recognizing that the sale was "subject to the parties securing [the] [t]own's waiver" of its right of first refusal under c. 61A, an addendum to the contract laid out the parties' obligations with respect to securing the

_____

[2] We acknowledge the amicus brief submitted by the town of Hopedale.

[3] RH Benea had not requested classification under G. L. c. 61A for the 2021 fiscal year, but neither party contends that this fact has any bearing on the legal issues raised in this appeal.

[4] The growing of berries or fruits, including cranberries, is a horticultural use rather than an agricultural one, see G. L. c. 61A, §§ 1-2, but we follow the parties' nomenclature. As the two classifications are treated similarly under the statute, the distinction has no significance for this case.

town's waiver of that right.  Among other things, Watermark agreed to provide RH Benea "with [a] written summary of [Watermark's] intended use of the property" within five days and to provide any further documentation necessary for RH Benea to prepare and submit a notice of intent to sell and to request the town's waiver of its right of first refusal.

The following day, consistent with the terms of the contract to purchase, counsel for RH Benea sent an e-mail message to Watermark's manager, Jonathan Mark, inquiring about Watermark's intended use of the property.  Mark (copying his attorney) replied one hour later:  "I do not plan to keep [the property] in 61A.  The plan is to subdivide off [two] 40,000 square-foot lot[s] plus or minus and keep the rest agricultural."[5]

The parties, each represented by counsel, then proceeded to negotiate the terms of a purchase and sale agreement (P&S), which they executed on January 25, 2021.  The P&S contained a

---

[5] Although Watermark contends that it was "forced" to provide this language, the record does not support its contention; instead, the record shows only that Mark provided the requested language in compliance with the terms of the contract to purchase into which Watermark had voluntarily entered.  There is no suggestion on this record of duress or coercion sufficient to void a contract.  See Cabot Corp. v. AVX Corp., 448 Mass. 629, 637 (2007); Freeman v. Teeling, 290 Mass. 93, 96-97 (1935); Restatement (Second) of Contracts § 175 (1981).

paragraph titled "Chapter 61A notice and obligations of the parties." Among other things, this paragraph repeated Watermark's obligation to cooperate with RH Benea in submitting to the town a notice of intent to sell and requesting the town's waiver of its right of first refusal pursuant to c. 61A. The P&S also restated, "[t]he sale is subject to the parties securing the [t]own's waiver" or lapse of the town's right.[6]

As anticipated and agreed, on February 9, 2021, RH Benea sent a "Notice of Owner's Intent to Sell pursuant to [G. L. c.] 61A" (notice of intent) by certified mail to all persons required to receive such notice under G. L. c. 61A, § 14, eighth par.[7] Incorporating the language provided by Mark, the notice of intent informed the town:

> "[Watermark] intends to use the [property] in the following
> manner:  seek to subdivide two (2) 40,000 square-foot lots
> plus or minus and maintain the rest as agricultural."

---

[6] At Watermark's request, the P&S also provided that RH Benea was obligated to pay any taxes owed to the town for the period of its ownership as a result of not requesting agricultural status for the property for fiscal year 2021.

[7] "The notice of intent to sell or convert shall be sent by the landowner by certified mail or hand delivered to the mayor and city council of a city, or board of selectmen of a town, and in the case of either a city or a town, to its board of assessors, to its planning board and conservation commission, if any, and to the state forester."

G. L. c. 61A, § 14, eighth par.

The notice of intent also included a copy of the P&S, notified the town of its right of first refusal under c. 61A, and asked for a decision from the town within the statutory deadline of 120 days.[8]  See G. L. c. 61A, § 14, twelfth par.

Approximately one month later, after learning that the town might indeed exercise its option to purchase the property, Mark sent an affidavit to the town in which he averred, "I do not intend on currently seeking a change in or converting the [p]roperty's assessed use; and I currently intend on continuing to utilize its agricultural use."  This was followed two weeks later by a joint letter from Watermark and RH Benea purporting to "withdraw" the notice of intent, and stating, "[Watermark] does not intend on currently seeking a change in or converting the [p]roperty's assessed use."

The town was unmoved by Watermark's changed position and elected to exercise its option to purchase the property through its assignee, the Duxbury affordable housing trust (trust).[9]  See G. L. c. 61A, § 14, seventeenth par. (permitting municipality to

---

[8] As it turned out, the deadline was tolled until ninety days after the termination of the Governor's declaration of a state of emergency due to the COVID-19 pandemic.  See St. 2020, c. 53, § 9.

[9] The trust was created by the town to provide for the preservation and creation of affordable housing; its trustees are appointed by the town's board of selectmen.

assign its option "to a nonprofit conservation organization or to the commonwealth or any of its political subdivisions").

This suit then followed, in which Watermark sought specific performance and several different declarations of rights. In essence, the complaint sought to have the town's exercise of its option declared void and to compel RH Benea to sell the property to Watermark. Ultimately, ruling on cross motions for summary judgment with respect to the claims then remaining in the case,[10] a Superior Court judge entered judgment in favor of the defendants. Watermark's appeal is now before us, having been transferred to this court on our own initiative.

2. Discussion. Before addressing Watermark's specific arguments, we briefly sketch the salient aspects of G. L. c. 61A, referring the interested reader to Sudbury v. Scott, 439 Mass. 288, 299-301 (2003), for a comprehensive discussion of the statute's purpose and legislative history.

---

[10] Some of Watermark's claims had been previously disposed of via the defendants' motion for judgment on the pleadings, and they are not before us in this appeal. Specifically, Watermark does not appeal from the dismissal of its claim that the town's exercise of its right to first refusal violated the town's "right-to-farm" bylaw, nor from the dismissal of its claim that the town could not exercise its right because more than a year had passed since the property was last taxed as agricultural land, see G. L. c. 61A, § 14, first par. (section applies to land "while so taxed [under c. 61A] or within [one] year after that time").

General Laws c. 61A was created "to encourage the continuation of active farming and horticultural uses, and to discourage conversion of agricultural and horticultural land to other uses." Franklin v. Wyllie, 443 Mass. 187, 195 (2005). It achieves these ends by two means: a tax incentive to landowners who keep their property in agricultural or horticultural use, and a municipal right of first refusal should land be sold for, or converted to, different uses. "The right of first refusal was intended to provide a mechanism to allow a municipality actively to preserve and protect agricultural and horticultural land within its borders," id., and functions in part as compensation to the municipality for the landowner's lowered tax assessment, Scott, 439 Mass. at 294.

Section 14 of G. L. c. 61A contains the procedures to be followed in the event a landowner wishes to sell or convert c. 61A land. Land taxed under c. 61A may not be "sold for, or converted to, residential, industrial or commercial use while so taxed," unless the municipality in which the land is located has been notified by the landowner of "the intent to sell for, or to convert to, that other use."[11] G. L. c. 61A, § 14, first par.

---

[11] Because this case does not involve a landowner's conversion of land, but rather a sale, we do not set out the procedures, requirements, and exceptions, for a conversion of c. 61A land. They may be found in G. L. c. 61A, § 14, second, seventh, and thirteenth pars.

The notice of intent to sell must include, among other things, (1) a statement of intent to sell, (2) a statement of proposed use of the land, (3) the location and acreage of the land, and (4) a certified copy of an executed purchase and sale agreement reflecting a bona fide offer to purchase (as that term is defined in the statute).  G. L. c. 61A, § 14, third-sixth pars.  A noncompliant notice of intent may be rejected as such by the municipality within thirty days of its receipt.  G. L. c. 61A, § 14, eleventh par.  Otherwise, in the case of a compliant notice of intent, the municipality has a 120-day first refusal option to meet a bona fide offer to purchase the c. 61A land.  G. L. c. 61A, § 14, twelfth par.  See Banevicius v. Barnstable, 497 Mass. 585, 587 (2026).

Watermark argues that the judge erred in concluding that the town was entitled to exercise its option to purchase the property.  First, Watermark argues that the notice of intent did not sufficiently state an intent to convert the property to a non c. 61A use and accordingly did not trigger the town's right of first refusal.  Second, Watermark contends that its intent with respect to the future use of the property was a disputed issue of fact precluding summary judgment.  Third, Watermark argues that the town could not exercise its option to purchase once the notice of intent was "withdrawn."  Fourth, Watermark

urges us to conclude that the town's option was limited to the two lots identified for conversion in the notice of intent.[12]

"We review the allowance of a motion for summary judgment, as well as questions of statutory construction, de novo." Trustees of Boston Univ. v. Clough, Harbour & Assocs. LLP, 495 Mass. 682, 684 (2025). "[W]here both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [entered]." 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012), quoting Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass. App. Ct. 245, 248 n.4 (2010). Summary judgment is appropriate where, viewing the evidence in this light, "all material facts have been established and the moving party is entitled to judgment as a matter of law." Trustees of Boston Univ., 495 Mass. at 683, quoting Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023).

---

[12] Watermark also argues that the notice of intent was sent due to Watermark and RH Benea's mutually mistaken belief that they were required to notify the town of the sale even if there was no planned change of use. But this argument is not supported by the record. Even assuming for the sake of argument that Watermark may have labored under some mistake of law or fact, the summary judgment record contains nothing to suggest that RH Benea did. Cf. Caron v. Horace Mann Ins. Co., 466 Mass. 218, 223 (2013) (reformation on ground of mutual mistake permitted where "both parties were laboring under the same misapprehension as to a particular, essential fact" [citation omitted]); Mickelson v. Barnet, 390 Mass. 786, 791-792 (1984) (mutual mistake of law).

a.  Sufficiency of notice.  Whether the notice of intent was sufficient to trigger the town's right of first refusal is a question of statutory interpretation and therefore a matter of law for the court.  Cf. Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 632 (1992) (timeliness of notice under insurance policy is matter of contract interpretation and thus question of law).  Relying on G. L. c. 61A, § 14, first par., Watermark argues that a notice of intent to sell must specify whether the land will be put to "residential, industrial or commercial use," and not merely that it will be used for nonagricultural purposes.  Because the notice of intent in this case did not specify any particular intended nonagricultural use, Watermark contends that the notice was insufficient to trigger the town's right of first refusal.

As Watermark points out, the first paragraph of § 14 requires that land taxed under G. L. c. 61A not be sold for "residential, industrial or commercial use" unless the municipality "has been notified of the intent to sell for . . . that other use" (emphasis added).[13]  G. L. c. 61A, § 14, first

_____

[13] Section 14, by its terms, makes the obligation to submit a notice of intent dependent on the seller's intent rather than the buyer's.  See G. L. c. 61A, § 14 (referring to "intent to sell for . . . other use").  But as this court has observed, § 14 "must be read in a commonsense fashion to effectuate the purpose of the statute. . . .  The right of first refusal, designed to preserve the agricultural use of land, would have little meaning if it were triggered solely by the intent of the

par.  Although the word "that" could be read to signify that notice of the particular use (i.e., residential, industrial, or commercial) to which the land is intended to be put once sold or converted is required,[14] we have previously avoided a hypertechnical reading of § 14, first par., and have said that the municipality's right of first refusal is triggered by notice of the sale of c. 61A land for "nonagricultural" use.  Scott, 439 Mass. at 297-298.  We accordingly read the reference in § 14, first par., to "residential, industrial or commercial use" to enumerate the types of intended uses that will trigger a seller's obligation to notify the town, rather than to impose a requirement for the content of the notice itself.

This interpretation brings § 14's first paragraph into harmony with its third, which governs the contents of the notice of intent to sell.  See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605-606 (2019) (statutory provisions must be read together to avoid producing internal inconsistency); Scott, 439 Mass. at 296 n.11 (construing

---

seller.  Typically, it is the buyer's intent that will determine the use of the land after sale."  Scott, 439 Mass. at 299 n.14.  Here, it is undisputed that the notice of intent contained Watermark's statement of intended use.

[14] See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/that [https://perma.cc/QP59-TXJH] (defining "that" as "the person, thing, or idea indicated, mentioned, or understood from the situation").

provisions of c. 61A together to further statutory purpose of advancing municipality's ability to exercise right of first refusal). As pertinent here, § 14, third par., requires that the notice contain "a statement of proposed use of the land"; it does not require that the proposed use be classified as either residential, industrial, or commercial.[15] See Scott, 439 Mass. at 298-299. Requiring additional classification would not further the purpose of § 14, namely, to protect the town's ability to exercise its right of first refusal. See Wyllie, 443 Mass. at 196 (§ 14 to be construed "in a manner that will not frustrate or impair a town's right of first refusal"). Provided that the notice of intent to sell reasonably discloses the intended nonhorticultural or nonagricultural use to the municipality, it is an adequate "statement of proposed use of the land" for purposes of G. L. c. 61A, § 14, third par.[16]

---

[15] "Any notice of intent to sell for other use shall be accompanied by a statement of intent to sell, a statement of proposed use of the land, the location and acreage of land as shown on a map drawn at the scale of the assessors map in the city or town in which the land is situated, and the name, address and telephone number of the landowner."

G. L. c. 61A, § 14, third par.

[16] If the notice of intent does not sufficiently disclose the proposed use of the property, the town has the ability to reject the notice and seek clarification. See G. L. c. 61A, § 14, eleventh par. ("If the notice of intent to sell or convert does not contain all of the material described above, then the town or city, within [thirty] days after receipt, shall notify

Watermark also contends that the notice of intent in this case did not convey an intent to convert any part of the property to non c. 61A use.  This argument is defeated by the language of the notice itself.  The statement that Watermark "intends to . . . subdivide [two lots] and maintain <u>the rest</u> as agricultural" has the ordinary meaning that the subdivided lots would not be so maintained (emphasis added).  See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/the%20rest [https://perma.cc/L2GU-YZUF] (defining "the rest" as "the part that is left when other people or things are gone, used, etc.:  the remainder").  Although the notice of intent did not explicitly identify to which specific use the two divided lots would be put, it plainly stated that they would be subdivided for some non c. 61A use.

b.  <u>Watermark's changing intent</u>.  Taking the summary judgment record in the light most favorable to Watermark, there was conflicting evidence concerning Watermark's intended use for the property at different points in time.[17]  "Ordinarily a

---

the landowner in writing that notice is insufficient and does not comply").

[17] The summary judgment record showed that in the days and weeks following the contract to purchase, Mark repeatedly discussed his plans for the property with various town officials and told them that his "intent [was] to develop [two] 40000 sq ft residential lots up front" as "[t]he sale of those lots is the only way the investment makes any financial sense" while leaving the remainder of the property in agricultural use.  He

party's intent is a question of fact," <u>Nashua Corp</u>. v. <u>First State Ins. Co.</u>, 420 Mass. 196, 204 (1995) and "[w]here a party's state of mind or motive is in issue, summary judgment is disfavored," <u>Maimaron</u> v. <u>Commonwealth</u>, 449 Mass. 167, 177 (2007), quoting <u>Pinshaw</u> v. <u>Metropolitan Dist. Comm'n</u>, 402 Mass. 687, 695 (1988). Relying on these general principles, Watermark contends that summary judgment should not have entered against it. But Watermark was required to show not only that its intent was disputed, but also that the dispute was material. <u>Anderson</u> v. <u>Liberty Lobby, Inc</u>., 477 U.S. 242, 247-248 (1986); <u>Norwood</u> v. <u>Adams-Russell Co</u>., 401 Mass. 677, 683 (1988), <u>S.C.</u>, 406 Mass. 604 (1990). "Only those facts that, if true, provide a basis for a reasonable jury to find for a party are material." <u>Carey</u> v. <u>New England Organ Bank</u>, 446 Mass. 270, 278 (2006). "[T]he substantive law will identify which facts are material." <u>Id</u>., quoting <u>Anderson</u>, 477 U.S. at 248.

---

also stated that he would like to "maximize [the property] for apartments if that's possible." Along the same lines, during this same time frame, Watermark informed RH Benea that it intended to subdivide two residential building lots and that it did not intend to keep the property in c. 61A classification. However, approximately two months after entering into the contract to purchase, Watermark informed the town that it did "not intend on currently seeking a change in or converting the [p]roperty's assessed use" and that it "currently intend[ed] on continuing to utilize its agricultural use." In addition, in an affidavit prepared in connection with this litigation, Mark averred that his "intended use was and ha[d] always been agricultural, which is not a conversion of the existing use of the property."

As we have already noted, § 14 requires that the notice of intent contain "a statement of proposed use of the land." G. L. c. 61A, § 14, third par. The purpose of this requirement is to protect a municipality's ability to make an informed decision whether to exercise its option to purchase the land before it is sold. See Scott, 439 Mass. at 301. Thus, what is material is the expression of the purchaser's intent as contained in the notice of intent upon which the municipality will rely. "The statute refers to a specific intent and a specific point in time. The critical date is the date of sale, and the critical intent is the intent to discontinue the agricultural use of the land on acquiring title." Id. at 298-299. "The statute contemplates that buyers and sellers will act in good faith and will notify the town if a sale for such use is intended." Id. at 298.

Accordingly, despite evidence of Watermark's evolving intentions regarding the property, there was no material issue of disputed fact standing in the way of summary judgment. Watermark itself provided the language regarding its intended use of the property; that language was included in the notice of intent with Watermark's knowledge and assent; and Watermark knew that the information contained in the notice of intent would trigger, and be used by the town in deciding whether to exercise, the town's right of first refusal. Once the notice

disclosing Watermark's intent was received by the town, the town's right of first refusal "ripen[ed] into an option to purchase according to the terms of the offer," and Watermark's later varying intent became immaterial (quotation, citation, and alteration omitted).  Wyllie, 443 Mass. at 195.  See Billerica v. Card, 66 Mass. App. Ct. 664, 669 (2006).

Our decision in Scott is not to the contrary even though we concluded there that the purchaser's intent with respect to c. 61A land was a disputed question of fact "to be determined from his declarations, conduct and motive and all the attending circumstances" (citation omitted).  Scott, 439 Mass. at 302. The critical distinction between this case and Scott is that in Scott no notice of intent was sent to the town expressing the purchaser's intended use of the property.  See id. at 290-292. In other words, the town was not given an opportunity to assess or exercise its right of first refusal before the land was sold. We concluded that the purchaser's intent at the time the town should have been provided with notice was material because if the town could establish the purchaser's intent to discontinue agricultural use of the land as of the date of sale together with the failure to give notice, the town would be "entitled to specific performance of its option to purchase."  Id. at 299. Scott does not stand for the proposition that a purchaser's intent is a triable issue of fact where, as here, a municipality

has received the statutorily required notice of intent disclosing the purchaser's intent to convert the land to nonagricultural use.

c. "Withdrawal" of notice to sell. Watermark argues that it could, together with RH Benea, withdraw the notice of intent, thereby terminating the town's option to purchase the property. We disagree. Although § 14, thirteenth par., allows a landowner, during the period of appraisal, to withdraw a notice to convert c. 61A land, the statute does not provide any withdrawal mechanism where, as here, the town has received a notice to sell. See Cobble Hill Ctr. LLC v. Somerville Redev. Auth., 487 Mass. 249, 256 (2021), quoting Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 232 (2012) ("[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present").

On receipt of a bona fide notice of intent to sell, a municipality's right of first refusal under c. 61A ripens into an option to purchase the land on substantially the same terms and conditions as presented in the purchase and sale agreement that accompanies the notice of intent. See G. L. c. 61A, § 14, twelfth par.;[18] Wyllie, 443 Mass. at 195-196; Scott, 439 Mass. at

_____

[18] "For a period of 120 days after the day following the latest date of deposit in the United States mail of any

297-298. Reasoning from this principle, the Appeals Court, in 2006, held that because the option to purchase vests as soon as the municipality receives a notice of intent, "any purported subsequent withdrawal of the notice can have no effect." Billerica, 66 Mass. App. Ct. at 669.

Billerica involved a landowner's proposed conversion -- not sale -- of a portion of c. 61A land. After the town's board of selectmen voted to purchase that portion of the property at its appraised value, the landowner withdrew his notice of intent to convert. Reasoning that the town's receipt of a valid notice of intent triggered an irrevocable option to purchase, the Appeals Court concluded that the landowner "could not thereafter unilaterally take back rights that had already irrevocably vested in the town, at least in the absence of a statutory provision expressly permitting such withdrawal." Billerica, 66 Mass. App. Ct. at 669. This conclusion was consistent with our common law regarding vested options, see Stapleton v. Macchi, 401 Mass. 725, 729 n.6 (1988) ("An option is simply an irrevocable offer creating a power of acceptance in the optionee"), as well as our cases discussing the vesting of a

notice which complies with this section, the city or town shall have, in the case of intended sale, a first refusal option to meet a bona fide offer to purchase the land" (emphasis added).

G. L. c. 61A, § 14, twelfth par.

municipality's option under G. L. c. 61A, § 14, see Wyllie, 443 Mass. at 195-196; Scott, 439 Mass. at 297-298.

Section 14 was thereafter amended to allow a landowner, during the appraisal process, to revoke a notice of intent to convert "at any time and with no recourse to either party." G. L. c. 61A, § 14, thirteenth par., as appearing in St. 2006, c. 394, § 31. Critically, though, the Legislature did not, either then or in any subsequent amendment of the statute, extend the same authority to landowners who notified a municipality of their intent to sell c. 61A land. "The Legislature is presumed to be aware of the prior state of the law as explicated by the decisions of this court" (citation omitted), Commonwealth v. Montarvo, 486 Mass. 535, 541 (2020), and therefore, the Legislature's decision to amend § 14 to allow landowners only to revoke notices of intent to convert left intact our previous rulings that a municipality's option to purchase vests and becomes irrevocable upon receipt of a notice of intent to sell.

d. Scope of option. Pointing to G. L. c. 61A, § 17, which provides that if a landowner separates a portion of land "for a use other than agricultural or horticultural, the land so separated shall be subject to liability for conveyance or roll-back taxes applicable thereto, but such separation shall not impair the right of the remainder of such land to continuance"

under c. 61A, Watermark argues that the town's option to purchase should be limited to the two 40,000 square foot lots that the notice of intent described as intended for a nonagricultural use.  But § 17 concerns only roll-back taxes; it does not concern the municipal right of first refusal established in § 14.

Moreover, § 14 does not give a municipality flexibility to exercise its first refusal option on different terms from those disclosed in the notice to sell.  Instead, municipalities have "a first refusal option to meet a bona fide offer to purchase the land" (emphasis added).  G. L. c. 61A, § 14, twelfth par.  And we have stated that there is "no indication . . . that the Legislature intended that a municipality's 'first refusal option' to purchase would encompass the right to purchase such land on different terms and conditions than set forth in the 'bona fide offer.'"  Wylie, 443 Mass. at 195.  See G. L. c. 61A, § 14, twenty-seventh par. ("no sale of the land shall be consummated if the terms of the sale differ in any material way from the terms of the purchase and sale agreement which accompanied the bona fide offer to purchase as described in the notice of intent to sell except as provided in this section").

Here, the notice of intent included the P&S, which identified the terms and conditions of a sale of the entire twenty-five acre parcel at a set price.  The town was both

entitled and obligated to exercise its option on substantially the same terms, and not on some subset of the land.  Cf. Plante v. Grafton, 56 Mass. App. Ct. 213, 218 (2002) (landowner may not defeat option of first refusal by inserting terms that require municipality to acquire more than particular parcel of c. 61A land).

3.  Conclusion.  For the reasons set out above, the Superior Court's order allowing summary judgment in favor of the defendants is affirmed.

So ordered.