TILCON MASSACHUSETTS, INC. *vs.* COMMISSIONER OF
REVENUE.

No. 89-P-747.

Suffolk. November 13, 1990. - March 19, 1991.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Taxation*, Corporate excise, Corporation, Appeal, Abatement. *Statute*,
Construction. *Words*, "Timely filed."

Discussion of the cases establishing the rule that applying for a tax abate-
ment connotes the timely placement of the application in the hands of
the authority that is to consider it. [265-267]
The Commissioner of Revenue was warranted in denying a corporate tax-
payer's application for an abatement of excise taxes as being untimely
filed under G. L. c. 62C, § 37, where the taxpayer's application (which
had been mailed prior to the last day on which to apply for the abate-
ment) was received by the Commissioner three days after the deadline
had passed. [267-271]

APPEAL from a decision of the Appellate Tax Board.

*Andrew J. McElaney, Jr. (Michael L. Chinitz* with him)
for the plaintiff.

*Mary C. Connaughton*, Assistant Attorney General, for
the Commissioner of Revenue.

KASS, J. One of the verities of tax practice in Massachu-
setts is that an application for abatement of taxes, to be
timely filed, must be placed in the hands of the assessors or
the Commissioner of Revenue, as the case may be, before
expiration of the deadline date. Mailing it on the deadline
date is not good enough if the application for abatement ar-
rives after the due date. We are invited to reexamine that
rule in the context of State as compared to local taxation,
and in the light of comparatively recent directives concerning
the filing of State tax returns.

We sketch the facts behind the controversy. On February 27, 1987, the Appellate Tax Board (ATB) issued its decision in *United States Shoe Corp.* v. *Commissioner of Rev.*, 8 Mass. App. Tax Bd. Rep. 47 (Butterworth 1987), having to do with combined tax returns filed under G. L. c. 63, § 32B, a ruling later affirmed in *General Elec. Co.* v. *Commissioner of Rev.*, 402 Mass. 523 (1988). The ATB's decision entitled the taxpayer, Tilcon Massachusetts, Inc. (Tilcon), to claim a reduction in the excise taxes it had paid for the tax year ending December 31, 1984, and, to that end, to file an application for an abatement of $274,210 in those taxes. The deadline for so doing is prescribed in G. L. c. 62C, § 37, thus: "Any person aggrieved by the assessment of a tax . . . may apply in writing to the commissioner, on a form approved by him, for an abatement thereof at any time within three years from the last day for filing the return for such tax." G. L. c. 62C, § 37, as amended by St. 1978, c. 514, § 125. The last day for Tilcon to file its 1984 return was March 15, 1985. Consequently, the last day on which to apply for an abatement was March 15, 1988.

Tilcon's tax papers were prepared and filed from the office of its corporate parent in New Britain, Connecticut. The application for abatement was dispatched by certified mail to the Commissioner on March 14, 1988, and received by the Commissioner March 18, 1988, three days late. For the reason that it had been untimely made, the Commissioner denied the application for abatement. Tilcon appealed to the ATB, which affirmed the action of the Commissioner and dismissed the appeal. From that decision, Tilcon now further appeals. In its brief, Tilcon aptly states that the only issue is whether a "postmark rule," which takes the date of the postmark as the date of filing, shall govern applications for abatement under G. L. c. 62C, § 37.

As remarked at the beginning of this opinion, the rule is long entrenched that applying for an abatement connotes placing the application in the hands of the authority which is to consider it. See *Old Colony R.R.* v. *Assessors of Quincy*, 305 Mass. 509, 513-514 (1940); *Assessors of Brookline* v.

*Prudential Ins. Co. of America*, 310 Mass. 300, 308 (1941);
*New Bedford Gas & Edison Light Co.* v. *Assessors of
Dartmouth*, 368 Mass. 745, 747-748 (1975); *SCA Disposal
Servs., Inc.* v. *State Tax Commn.*, 375 Mass. 338, 341
(1978); *Assessors of Marlborough* v. *Commissioner of Rev.*,
383 Mass. 876 (1981); *Roda Realty Trust* v. *Assessors of
Belmont*, 385 Mass. 493, 495-496 (1982); *Shea* v. *Commis-
sioner of Rev.*, 390 Mass. 1001 (1983). *Guzman* v. *Assessors
of Oxford*, 24 Mass. App. Ct. 118, 120 (1987). So estab-
lished had the rule become that the *Marlborough* and *Shea*
decisions were cast as rescript opinions, a form generally re-
served for settled doctrine. *Schulte* v. *Director of the Div. of
Employment Security*, 369 Mass. 74, 79-80 (1985), a lead-
ing case on the subject of procedural time limits, cites to
cases involving late tax abatement applications as examples
of administrative appeals whose dismissal was understanda-
ble and acceptable. Failure to apply for an abatement on the
right form has provoked similar severity, i.e., dismissal. See
*Assessors of Boston* v. *Suffolk Law Sch.*, 295 Mass. 489,
495 (1936); *Commissioner of Corps. & Taxn.* v. *St. Botolph
Club, Inc.*, 321 Mass. 269, 279 (1947); *Aetna Life Ins. Co.* v.
*Commissioner of Corps. & Taxn.*, 323 Mass. 657, 659-661
(1949).

The rationale advanced for this exacting attitude is that
the remedy of abatement is a statutory one, for which the
statute has devised precise procedures. If any of the proce-
dures so prescribed is not complied with, the taxpayer loses
the remedy. *Old Colony R.R.* v. *Assessors of Quincy*, 305
Mass. at 511-513. *Singer Sewing Mach. Co.* v. *Assessors of
Boston*, 341 Mass. 513, 516 (1960). *New Bedford Gas &
Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. at
748. Also implicit in the cases is the idea that delivery in
hand prior to the statutory deadline is necessary to give the
taxing authority notice of impending liability. See *Assessors
of Brookline* v. *Prudential Ins. Co.*, 310 Mass. at 312; *Mac-
Donald* v. *Assessors of Mashpee*, 381 Mass. 724, 726
(1980); *SCA Disposal Servs., Inc.* v. *State Tax Commn.*,
375 Mass. at 341. Perhaps the force of those reasons for a

rule of rigid compliance is less than irresistible, but the rule has gained strength through repetition and is exceptionally well settled.

To break the rule's grip so far as corporate excise taxes are concerned, Tilcon advances two arguments: *first*, the strict compliance rule was formulated in relation to local, i.e., municipal, property taxes and should be confined to them; *second*, other statutory material, as well as a regulation and a directive from the Department of Revenue, have authorized "postmark filing," producing a confusing procedural map whose uncertainties ought to be resolved in favor of the taxpayer.

The first argument, that the delivery-in-hand requirement for effecting an application for a tax abatement does not pertain to corporate excise taxes, begins to come apart when one compares the statutory language of G. L. c. 59, § 59, which authorizes applications for local real estate tax abatements, with G. L. c. 62C, § 37, which authorizes applications for corporate excise tax abatements. The first sentence of the former, G. L. c. 59, § 59, as appearing in St. 1963, c. 125, provides that, "A person upon whom a tax has been assessed . . . if aggrieved by such tax, may . . . apply in writing to the assessors, on a form approved by the commissioner, for an abatement thereof. . . ." That is the language upon which the *Old Colony R.R.* case, *supra*, and its progeny are based. The latter, G. L. c. 62C, § 37, provides that: "Any person aggrieved by the assessment of a tax . . . may apply in writing to the commissioner, on a form approved by him, for an abatement thereof. . . ." The operative words of the two statutes are virtually identical. If essentially the same statutory language should lead to the same result, see *Webster* v. *Board of Appeals of Reading*, 349 Mass. 17, 19 (1965), nothing appears in the State tax abatement provision which gives Tilcon any hope. In this instance, there is especial significance to the virtually identical language because G. L. c. 62C, § 37, regarding State taxes, was inserted by St. 1976, c. 415, § 22, as part of a comprehensive revision and recodification of administrative provisions relating to

State taxation. In light of the well-understood secondary meaning which the words "apply in writing . . . for an abatement" had acquired by that time, we may conclude that the Legislature contemplated no change in what needed to be done to effect a timely application for abatement of State taxes, i.e., the Legislature adopted the judicial construction. *Commonwealth* v. *Benoit*, 346 Mass. 294, 297 (1963). *Barlow* v. *Wareham*, 401 Mass. 408, 411 (1988).

Decisional law deals the taxpayer no better hand because there are cases in which the "timely when received" criterion has been applied in a State excise tax context. *Shea* v. *Commissioner of Rev.*, 390 Mass. at 1001, dealt with an application for abatement and rejected mailing before the deadline as sufficient. For cases that reject mailing as sufficient performance of a notice requirement in other contexts, see *Assessors of Sandwich* v. *Commissioner of Rev.*, 382 Mass. 689 (1981); *Assessors of Marlborough* v. *Commissioner of Rev.*, 383 Mass. 876 (1981); *SCA Disposal Servs., Inc.* v. *State Tax Commn.*, 375 Mass. at 340-342. As to a case in which no distinction was drawn between the procedural requirements of local property taxes and State taxes, see *Aetna Life Ins. Co.* v. *Commissioner of Corp. & Taxn.*, 323 Mass. 657, 660 (1949).

We come then to Tilcon's argument that the "postmark rule" so pervades State tax procedure that taxpayers ought to be able to rely on it. At the core of the contention is the idea that a statutory scheme ought not to set traps for the unwary. See *Becton, Dickinson & Co.* v. *State Tax Commn.*, 374 Mass. 230, 233 (1978). In support of its argument, Tilcon points first to G. L. c. 62C, § 33A, inserted by St. 1976, c. 415, § 22, which provides that, if a "payment of tax to the commissioner is required to be made on or before a prescribed date," delivery to the United States mail on or before the prescribed date will satisfy the requirement, although the statute specifies categories of tax payments as to which posting must be accomplished "on or before the second day before such prescribed date." Tilcon also calls to attention the Commissioner's "Technical Information Release

84-3," which treats State tax returns as timely filed if posted by the due date, although again certain returns must be posted on or before the second day before the prescribed due date.[1] Having persuaded itself that postmark filing is the norm in the State tax field, Tilcon finds further confusion in 830 Code Mass. Regs. § 62C.37.1(2) (1988), which says that "[an] application for abatement may be filed at any time within three years from the last day for filing the return for such tax . . . ." Tilcon focuses on the word "filed" and draws the conclusion that because of G. L. c. 62C, § 33A, and Technical Information Release 84-3, "filed" has acquired a secondary meaning of postmark filing in the State taxation scheme.

The fault in Tilcon's line of reasoning is that if filing were universally understood as accomplished by placing a document in the mail, there would be no need for statutes such as G. L. c. 62C, § 33A, and Technical Information Releases such as No. 84-3, which prescribe in what cases, and how, mailing complies with a filing deadline. Working against Tilcon is the canon of statutory construction that, if specific language appears in one section of a statute and is absent from a related section, the absent language should not be read into the provision from which it is missing. *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982). Indeed, as a general proposition, the cases have not equated mailing to filing. *Schulte* v. *Director of the Div. of Employment Security*, 369 Mass. at 78. *Garrett* v. *Director of the Div. of Employment Security*, 394 Mass. 417, 420 (1985). If mailing is to be the controlling date, explicit expression of that legislative intent should appear in the statute. *Assessors of Salem* v. *State Tax Commn.*, 371 Mass. 410, 412 (1976).

Similar differentiation about when filing requires direct placement with a clerk, and when it may be satisfied by posting in the mail, appears in the Massachusetts Rules of Civil Procedure. For example, Mass.R.Civ.P. 5(e), 365 Mass. 746

---

[1]The earlier mailing date is for taxes on cigarettes, gasoline, imported fuels, special fuels, room occupancy, sales, use, and alcoholic beverages.

(1974), defines "filing" as filing with the clerk or, in other instances, the judge in the case. This is understood to mean physically placing the paper in the clerk's, or judge's, custody. Smith and Zobel, Rules Practice § 5.9, at 147 (1974). Compare Mass.R.Civ.P. 3(1), 365 Mass. 733 (1974), which permits commencement of a civil action by mailing to the clerk a complaint and entry fee, with Mass.R.Civ.P. 3(2), which provides for an alternative to mailing, namely, "filing such complaint and an entry fee with such clerk." See also Mass.R.Civ.P. 5(b), 365 Mass. 745 (1974), which authorizes service of pleadings and other papers by mail. In the Massachusetts Rules of Appellate Procedure there is a like distinction between filing, which is not accomplished unless the papers are received by the due date, and service, which is complete on mailing. Compare Mass.R.A.P. 13(a), as amended, 406 Mass. 1601 (1990), with Mass.R.A.P. 13(c), 365 Mass. 858 (1974). Examination of the distinctions drawn in court procedural rules is instructive because an application for an abatement of taxes has overtones of a court pleading; it commences a proceeding for relief through adjudication. The less rigorous postmark filing standard for tax payments and tax returns may reflect that to the State tax payments and returns are welcome, whereas applications for abatement are not.

Our acknowledgment that there are variations in what satisfies filing requirements among various categories of State tax administration does not constitute an endorsement of those variations. Taxpayers should be able to ask for refunds, the lay person's word for abatements, without having to command procedural arcana, and a uniform filing standard would help.

As this case and *State St. Boston Corp.* v. *Commissioner of Rev., post* 920 (1991), illustrate, the delivery-in-hand requirement which pertains to applications for abatement will occasionally derail a taxpayer who assumes too much. That taxpayers are sometimes uncertain as to what constitutes timely filing of documents with the appropriate State tax office was recently acknowledged by no less than the Commis-

sioner who, in the course of making recommendations for legislation,[2] proposed extending the postmark filing procedures of G. L. c. 62C, § 33A, to all State tax returns, applications for abatement, statements, or other documents. See 1990 House Doc. No. 228, recommendation number 17, at 16, and 1990 House Doc. No. 245, a bill filed to accompany the Commissioner's recommendation. For purposes of deciding this case it is important to bear in mind that confusion, such as it is, arises from the different procedures prescribed for different steps in the tax administration process, not from ambiguity in the statutes and regulations which prescribe those various procedures. Whether it is sound policy to adopt a unitary filing criterion is for the Legislature to determine and to act upon. The application for abatement in the instant case was fatally late.

*Decision of the Appellate*
*Tax Board affirmed.*

---

[2]In accordance with G. L. c. 30, § 33, the head of a State department may include legislative recommendations in connection with that officer's annual report.