MILTON B. ADAMS & another[1] *vs*. BOARD OF ASSESSORS OF WESTPORT.

No. 09-P-324.

Suffolk. November 10, 2009. - January 26, 2010.

Present: RAPOZA, C.J., SMITH, & LENK, JJ.

*Taxation,* Real estate tax: agricultural and horticultural land, assessment, abatement. *Real Property,* Agricultural and horticultural use, Conveyance. *Statute,* Construction.

The Appellate Tax Board properly granted an abatement of a conveyance tax assessed pursuant to G. L. c. 61A, § 12 (statute), on a portion of a parcel of land that had previously been classified as agricultural and on which the owners sought to build a personal residence, where the owners' building of a personal residence on the land did not constitute a change in use of the land for the purposes of the statute, in that it was not the type of activity the Legislature sought to deter or penalize through the enactment of the statute, but rather was the type of family farming activity that the Legislature sought to protect and promote, and was not the equivalent of a commercial or residential subdivision development under the statute. [183-185]

APPEAL from a decision of the Appellate Tax Board.

*Jeffrey T. Blake* for board of assessors of Westport.

*Dana Alan Curhan* for the taxpayers.

SMITH, J. The board of assessors of Westport (assessors) appeals from a decision of the Appellate Tax Board (tax board) abating a conveyance tax assessed pursuant to G. L. c. 61A, § 12, on real estate owned by Milton and Marilyn Adams (taxpayers). We affirm.

Under G. L. c. 61A, the so-called Agricultural Classification Act,[2] "the owner of five acres or more of land that has been in agricultural or horticultural use for the 'two immediately preceding tax years,' G. L. c. 61A, § 4, may apply to the board of

---

[1] Marilyn Adams.

[2] See *Mann* v. *Assessors of Wareham*, 387 Mass. 35, 35 (1982).

assessors to have the land assessed on the basis of its value for agricultural purposes only, and not on its value as judged by the 'highest and best use' standard under which real property customarily is assessed." *Franklin* v. *Wyllie*, 443 Mass. 187, 194 (2005). Essentially, c. 61A provides a tax break for landowners who devote at least five acres of their property to agricultural or horticultural use.

In exchange for the benefit of the tax break, c. 61A requires that landowners "compensate the municipality if and when the land is sold for or converted to residential, commercial or industrial use" within a prescribed period. *Sudbury* v. *Scott*, 439 Mass. 288, 294 (2003). The compensation may take one of three forms. *Id.* at 294-295. First, under G. L. c. 61A, § 12, a landowner who sells the subject property, or changes its use, may be liable for a conveyance tax, as was assessed in this case.[3] Second, under G. L. c. 61A, § 13, if the land ceases to qualify as agricultural land, roll-back taxes may be assessed.[4] Finally, under G. L. c. 61A, § 14,[5] any property which has been

---

[3]As to a change in use, G. L. c. 61A, § 12, inserted by St. 1973, c. 1118, § 1, provides in relevant part that:

> "Any land in agricultural or horticultural use which is valued, assessed and taxed under the provisions of this chapter, if changed by the owner thereof to another use within a period of ten years from the date of its acquisition by said owner, shall be subject to the conveyance tax applicable hereunder at the time of such change in use as if there had been an actual conveyance, and the value of such land for the purpose of determining a total sales price shall be fair market value as determined by the board of assessors of the city or town involved for all other property."

The rate of the conveyance tax is ten percent if the property's use changes in the first year of ownership, and the rate decreases by one percent for each following year, so that if the usage change occurs after ten years of ownership, no conveyance tax will be due. G. L. c. 61A, § 12.

[4]"Roll-back taxes are the difference between the property taxes actually paid under c. 61A and what would have been paid if the land had been assessed outside of c. 61A, for the current tax year and up to the four preceding tax years. The roll-back taxes only apply if they would exceed the conveyance taxes set forth in § 12 of the statute, in which case no conveyance taxes will be assessed against the property. G. L. c. 61A, § 13." *Sudbury* v. *Scott*, 439 Mass. at 295 n.8.

[5]General Laws c. 61A, § 14, as appearing in St. 2006, c. 394, § 31, states in pertinent part:

> "Land taxed under this chapter shall not be sold for, or converted

classified under the chapter as agricultural or horticultural cannot be sold for or converted to a nonqualifying use unless the municipality is notified and given a 120-day first refusal option to purchase the subject property.

1. *Factual and procedural background.* The following undisputed facts are taken from the tax board's decision. On June 21, 2005, the taxpayers purchased about thirteen and one-half acres of land on Horseneck Road in Westport. Thereafter, they filed an application for classification pursuant to G. L. c. 61A, requesting an agricultural or horticultural classification of the parcel for fiscal year 2007 based on their planned cultivation of an alfalfa crop. The taxpayers noted the total acreage of 13.41 on the application, but left blank the adjoining line on the form entitled "Acres to be Classified." The assessors granted the application in November, 2005, as to all 13.41 acres, and notified the taxpayers that the classification would be effective as of January 1, 2006, for fiscal year 2007 (July 1, 2006, through June 30, 2007).

On December 11, 2006, the taxpayers applied to the local building inspector for a building permit to begin construction of a home for themselves on a 1.4 acre portion of the parcel. The building permit was issued on January 5, 2007. A few months later, on or about May 11, 2007, the assessors assessed a conveyance tax on some unspecified portion of the parcel pursuant to G. L. c. 61A, § 12, presumably as a result of their conclusion

---

to, residential, industrial or commercial use while so taxed or within 1 year after that time unless the city or town in which the land is located has been notified of the intent to sell for, or to convert to, that other use . . . . Specific use of land for a residence for the owner, the owner's spouse or [certain others] . . . shall not be a conversion for the purposes of this section . . . ."

We note that this version of § 14 became effective on March 22, 2007, about three-fourths of the way through the 2007 fiscal year for which the tax assessment is in dispute in this case. See St. 2006, c. 394 (approved December 22, 2006, without emergency preamble or specified effective date); *Opinion of the Justices*, 368 Mass. 889, 892-893 (1975) (generally, act without emergency preamble takes effect ninety days from passage unless act specifies later date); *Vittands* v. *Sudduth*, 41 Mass. App. Ct. 515, 518 (1996) (same). In our view, however, for purposes of the narrow issue on appeal, the relevant language of the prior § 14 is substantially similar to that of the new version and leads to the same result. See G. L. c. 61A, § 14, inserted by St. 1973, c. 1118, § 1, and as amended by St. 1975, c. 794, § 8.

that the land was no longer being used for agricultural or horticultural purposes.[6] The tax amounted to $61,709, and was computed by applying a nine percent tax rate to a value of $685,590, and adding a $6.00 "Cert. Fee."[7] The taxpayers thereafter paid the tax, unsuccessfully sought an abatement from the assessors, and appealed to the tax board.

Following a hearing, the tax board concluded that the taxpayers' initiation of the building process for a residence on the property for their own habitation did not constitute a change in use within the meaning of G. L. c. 61A, § 12, because G. L. c. 61A, § 14, explicitly states that "[s]pecific use of land for a residence for the owner . . . shall not be a conversion [to a nonqualifying use] for the purposes of this section . . . ." See note 5, *supra.* The tax board accordingly issued a decision for the taxpayers, and granted an abatement in the amount of $61,709 plus statutory additions. This appeal by the assessors followed.

2. *Discussion.* A decision by the tax board will not be modified or reversed if it "is based on both substantial evidence and a correct application of the law." *Boston Professional Hockey Assn., Inc.* v. *Commissioner of Rev.*, 443 Mass. 276, 285 (2005). "Although the proper interpretation of a statute is for a court to determine, we recognize the [tax] board's expertise in the administration of tax statutes and give weight to the [tax] board's interpretations." *Raytheon Co.* v. *Commissioner of Rev.*, 455 Mass. 334, 337 (2009), citing *Bell Atl. Mobile of Mass. Corp., Ltd.* v. *Commissioner of Rev.*, 451 Mass. 280, 283 (2008). See *Northeast Petroleum Corp.* v. *Commissioner of Rev.*, 395 Mass. 207, 213 (1985) (describing court's "traditional deference to the expertise of the [tax] board in tax matters involving interpretation of the laws of the Commonwealth"); *CFM Buckley/North, LLC* v. *Assessors of Greenfield*, 453 Mass. 404, 406 (2009). We strive to adopt a reading "consistent with the purpose of the statute and in harmony with the statute as a whole." *Sudbury* v.

---

[6]The fiscal year 2007 real estate tax bill on which the conveyance tax appears does not indicate the area of the parcel on which the tax was assessed.

[7]As the tax board found, it "could not discern from the record the method used to arrive at the valuation or confirm that the tax assessed was based solely on the value of the [1.4 acre] building lot." On the latter point, see G. L. c. 61A, § 12, as amended by St. 2006, c. 394, § 26 ("The conveyance tax shall be assessed on only that portion of land on which the use has changed").

*Scott,* 439 Mass. at 296 n.11, and we also bear in mind the general principle favoring strict construction of tax statutes to resolve doubt in favor of taxpayers, see *South St. Nominee Trust* v. *Assessors of Carlisle,* 70 Mass. App. Ct. 853, 856 (2007).

Here, the phrase that triggers the conveyance tax in G. L. c. 61A, § 12, "[a]ny land . . . changed . . . to another use," is not specifically defined in the statute, nor does it by its terms alone, as the assessors argue, unambiguously apply to the situation here. In its interpretation, the tax board relied on an exception to the notice and option to purchase requirement of § 14, that of building a personal residence on land assessed pursuant to c. 61A, to inform the meaning of § 12, which outlines conveyance tax liability. We agree with the tax board that the owners' building of their personal residence on their agricultural land did not constitute a change in use of that land for the purposes of § 12. Our conclusion is supported by the legislative history and purpose of c. 61A, which were discussed at length in *Sudbury* v. *Scott,* 439 Mass. at 299-301. Therein, the Supreme Judicial Court observed that c. 61A was enacted because "[t]he Legislature was concerned with the rapidly decreasing number of farms in the Commonwealth during the 1940's and 1950's, and the resulting loss of a vital resource for the people of the Commonwealth." *Id.* at 299. Seeking a way to reverse that trend, the Legislature commissioned several studies between 1955 and 1970, which proposed as a solution the assessment and taxation of agricultural lands at agricultural use value. *Ibid.* The studies "were unanimous in recognizing that real estate taxation contributed to the demise of farms," but also voiced concern that the proposed lowered assessments, while alleviating some of the economic burden on farmers, could also "accelerate the worrisome loss of farmland to speculators and developers who would acquire and hold agricultural property at a low rate of taxation while awaiting the opportunity to convert or sell the land for development." *Id.* at 299-300. The conveyance tax, roll-back tax, and right of first refusal provisions were enacted to address those concerns. See *id.* at 300 & n.17, 301.

The taxpayers' plan to build their residence on their farmland was not the type of activity the Legislature sought to deter or penalize through the enactment of G. L. c. 61A, § 12. Rather,

the idea of family farming, allowing farmers and farm workers to live on the farm without the burden of additional tax penalties, is exactly the type of activity the Legislature sought to protect and promote though the enactment of c. 61A. The construction of such a residence is not the equivalent of commercial or residential subdivision development under the statute.

Therefore, because "[w]e interpret a statute consistent with the legislative intent and in order to effectuate the purpose of its framers," *Baccanti* v. *Morton*, 434 Mass. 787, 794 (2001), we conclude that an owner's effort to build a personal residence on a portion of a parcel assessed, until that point in time, under the provisions of G. L. c. 61A does not trigger the assessment of conveyance taxes under § 12 of the statute.[8]

In reaching our conclusion we acknowledge that § 12 does not explicitly exclude from its scope the building of a personal residence on agricultural land, as does § 14 of the statute. Nevertheless, as did the tax board, we read the same principle to reside within the meaning of § 12. See *Franklin* v. *Wyllie*, 443 Mass. at 196 ("[R]emedial statutes such as G. L. c. 61A are to be liberally construed to effectuate their goals"), citing *Deas* v. *Dempsey*, 403 Mass. 468, 470 (1988), and *Plante* v. *Grafton*, 56 Mass. App. Ct. 213, 217 (2002). The tax board properly abated the conveyance tax levied on the taxpayers' land.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[8]We pause here to observe that G. L. c. 61A, § 15, inserted by St. 1973, c. 1118, § 1, instructs as follows:

> "All buildings located on land which is valued, assessed and taxed on the basis of its agricultural or horticultural uses in accordance with the provisions of this chapter and all land occupied by a dwelling or regularly used for family living shall be valued, assessed and taxed by the same standards, methods and procedures as other taxable property."