VERIZON NEW ENGLAND INC. *vs.* BOARD OF ASSESSORS OF
NEWTON & others.[1]

No. 10-P-323.

Suffolk. November 9, 2010. - March 19, 2012.

Present: McHugh, Sikora, & Fecteau, JJ.[2]

*Telecommunications. Telephone Company. Public Utilities,* Telecommunica-
tions, Value. *Taxation,* Assessors, Appellate Tax Board: final decision,
Corporation, Personal property tax: public utility, Personal property tax:
value. *Value. Real Property,* Poles and wires, Tax.

A Superior Court judge erred in dismissing a civil complaint seeking a judg-
ment declaring that the boards of assessors of the cities of Newton and
Boston (boards) were premature in demanding payment of certain property
taxes by a corporation that provides telephone, telegraph, and other telecom-
munications services, where the rulings of the Appellate Tax Board on
which the demands were based were not "final" decisions within the
meaning of G. L. c. 59, § 39, in that the time for taking appeals from
those rulings had not expired at the time the boards made their demands.
[459-463]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on August 21, 2009.

After transfer to the Superior Court Department, the case was
heard by *Thomas E. Connolly,* J., on motions for summary
judgment.

*James F. Ring* for the plaintiff.

*Anthony M. Ambriano* for the defendants.

McHugh, J. Verizon New England Inc. (Verizon) appeals from
a Superior Court judgment dismissing a complaint designed to
obtain a declaration that the boards of assessors of the cities

---

[1]Treasurer and collector of Newton, commissioner of the assessing depart-
ment of Boston, board of review of the assessing department of Boston, and
treasurer and collector of Boston.

[2]Justice McHugh participated in the deliberation on this case and authored
the opinion prior to his retirement.

of Newton and Boston and the treasurers/collectors of those cities (collectively, the defendants or assessors) prematurely demanded payment of property taxes on Verizon's construction work in progress (CWIP) as well as some of the poles and wires it used in the conduct of its business. We agree that the defendants' collection efforts were premature and that Verizon was entitled to a judgment so declaring.

a. *Background.* A common set of facts gave rise to this appeal, which focuses on a matter of procedure, and to an appeal on the merits we also decide in an opinion issued today.[3] To place the procedural issues in context, on March 3, 2008, the Appellate Tax Board (board) issued an order ruling, for the first time, that Verizon was taxable, pursuant to G. L. c. 59, § 18, First, for certain categories of its poles and wires. On August 4, 2009, based on the same statutory provision, the board issued a decision holding, again for the first time, that Verizon's CWIP also was taxable. Accordingly, the board ruled that the property at issue should have been valued by the Commissioner of Revenue (commissioner) as part of the annual valuation process in which she engages pursuant to G. L. c. 59, § 39.[4] The board's decision increased Verizon's Boston and Newton taxes by a total of $7,492,533.88.

In its decision, the board stated that the defendants were "authorized to assess additional taxes . . . based on the increases to the [commissioner's] valuations established by the Board." The defendants did so on August 7, 2009, and demanded payment of the increased taxes by September 8, 2009. Verizon paid

---

[3] *Verizon New England, Inc.* v. *Assessors of Boston, ante* 444 (2012) (*Verizon I*).

[4] The valuation process is discussed in detail in *Verizon I, supra* at 445-446. Briefly, though, c. 59, § 39, as appearing in St. 1955, c. 344, § 1, directs the commissioner to determine annually the valuation of each telephone and telegraph company's "machinery, poles, wires and underground conduits, wires and pipes" wherever located in the Commonwealth. The commissioner certifies this valuation to the taxpayer and to the board of assessors (assessors) in the municipality where the property is subject to taxation. The taxpayer and assessors may appeal the commissioner's valuation to the board. The board's decision is "final and conclusive," except as provided in G. L. c. 58A, § 13, which permits a party aggrieved by the board's decision to appeal the board's legal rulings to the Appeals Court. G. L. c. 59, § 39, as appearing in St. 1955, c. 344, § 1. The commissioner did not include the property in question in her valuation because she did not believe that the property was taxable.

the taxes under protest.[5] It also took an appeal to this court from the board's decision and commenced an action in the Supreme Judicial Court seeking a declaration that the assessment was premature and an injunction ordering return of the money it had paid under protest. A single justice of the Supreme Judicial Court remanded the case to the Superior Court where a judge of that court, after receiving briefs and conducting a hearing, ordered entry of summary judgment dismissing the case "for the reasons stated in the defendants' [brief]."[6]

b. *Discussion.* At the heart of this appeal is the appropriate construction of the term "final decision" as it appears in G. L. c. 59, § 39. In pertinent part, § 39, as amended by St. 1978, c. 514, § 83, requires assessors to assess a telephone company's personal property

> "at the value determined by the commissioner[,] . . . provided, however, that in the event of a final decision by the appellate tax board or of the supreme judicial court under the preceding paragraph establishing a different valuation, the assessors shall grant an abatement, or assess and commit to the collector with their warrant for collec-

---

[5]See G. L. c. 60, § 98 ("No action to recover back a tax shall be maintained, . . . unless commenced within three months after payment of the tax nor unless such tax is paid . . . after . . . a written protest signed by" the taxpayer).

[6]The defendants contend that the Superior Court judge made a discretionary determination to decline jurisdiction of the case and that we should review that decision solely for abuse of discretion. But the power to decline jurisdiction in cases like this exists only when the taxpayer has an adequate administrative remedy. See *Sydney* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 289, 294-295 (1976); *DeMoranville* v. *Commissioner of Rev.*, 457 Mass. 30, 34-35 (2010). The existence of such a remedy in this case is unclear at best, for Verizon is challenging the timing of the assessment, not the power to make an assessment at the proper time. The defendants, not the board, made the timing decision. Our research reveals no administrative path for challenging that decision and the defendants have pointed to none. Beyond that, the decision below does not evince an intent to make a purely jurisdictional determination. On the contrary, it has all the earmarks of a decision on the merits. Among those earmarks is note 1 in the judge's memorandum of decision in which he said: "Initially this case had been assigned for a trial on the merits. However, all parties now agree that there are no questions of facts in dispute and the issues are straight questions of law for the Court to decide. Therefore, all parties agree that this case can and should be decided on cross-motions for summary judgment." Accordingly, we proceed to the merits.

tion an additional tax, as the case may be, to conform with the valuation so established by such final decision."

The "preceding paragraph" establishes a right to appeal pursuant to G. L. c. 58A, § 13. Section 13, inserted by St. 1998, c. 485, § 2, provides, again in pertinent part, that "[f]rom any final decision of the board . . . an appeal as to matters of law may be taken to the appeals court by either party to the proceedings before the board so long as that party has not waived such right of appeal."[7]

All parties agree that c. 59, § 39, requires that the assessors make a tax assessment in the following circumstances: (1) upon the commissioner's initial valuation;[8] (2) if the board issues a decision altering the commissioner's valuation but neither party appeals from the decision within the time permitted; and (3) after the court issues a final decision on an appeal challenging the decision. They disagree, though, about the power of the assessors to make an assessment under the circumstances present here, i.e., after the board issues a decision altering the commissioner's valuation but before the time for taking an appeal from that decision has expired. Verizon argues that the assessors have no such power because no "final decision" exists as long as a party has time to appeal the board's decision pursuant to c. 58A, § 13. The assessors counter that each "decision" the board issues constitutes the requisite "final decision." Indeed, they suggest, § 13 itself permits appeals only from "final" decisions.

We review de novo decisions granting summary judgment. *Siebe, Inc.* v. *Louis M. Gerson Co.*, 74 Mass. App. Ct. 544, 549 (2009). Standing alone, the plain text of c. 59, § 39, which is the starting point for interpretive analysis, see *Fleet Natl. Bank* v. *Commissioner of Rev.*, 448 Mass. 441, 448 (2007); *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010), can credibly support either reading. However, "our respect for the Legislature's considered judgment dictates that

---

[7]Before 1985, § 13 provided a right of appeal to the Supreme Judicial Court, which synchronized the language of that statute with the language of c. 59, § 39. In September of that year, however, the Legislature changed the language of c. 58A, § 13, to direct appeals to the Appeals Court, see St. 1985, c. 314, § 1, but made no corresponding change in c. 59, § 39.

[8]In fact, the assessors made such an assessment here and Verizon paid the amount assessed.

we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation." *Bednark* v. *Catania Hospitality Group, Inc.*, 78 Mass. App. Ct. 806, 811 (2011). See *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), quoting from *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982) ("[W]e must read the statute in a way to give it a sensible meaning"). When we consider the practical effect of the parties' respective positions, we think that a sensible interpretation requires the approach Verizon advances.

Were we to accept the assessors' argument, taxpayers and municipalities would face an unsettled series of assessments and abatements in any fiscal year. In addition to paying the commissioner's initial valuation, a taxpayer would be required to pay an additional, contested valuation if a board decision so required. Likewise, the municipality would be required to abate a collected tax if a board decision reduced the assessors' valuation or otherwise so ordered. Then, depending on the action of the court on appeal, another round of assessments or abatements could occur. As a result, a taxpayer like Verizon could potentially pay the initial assessment, obtain a refund upon a board decision, and then be required to repay the refund upon a judicial decision. Municipalities would face a similar merry-go-round.

Verizon's construction of c. 59, § 39, is further buttressed by the Supreme Judicial Court's interpretation, albeit in dictum, of a prior version of the statute in *State Tax Commn.* v. *Assessors of Haverhill*, 331 Mass. 306 (1954). Though the tax disputes in *Haverhill* were ultimately disposed of as moot, the court stated that until the time for appeal from a board decision expired or the court decided any pending appeal, "there has been no final determination by the board, since its decision may have to be modified as the result of the appeal. And we do not think that an assessment before that time can be validated, if the action of the board should subsequently be sustained in this court." *Id.* at 309.

Lastly, the provisions of c. 58A, § 13, allowing appeals to the court only from "final" decisions of the board do not mean that those decisions are also "final" for purposes of the abatement and assessment provisions of c. 59, § 39. Chapter 58A,

§ 13, contains provisions for seriatim issuance of a decision and "findings and report," all of which must be completed before a decision is "final" and the appellate clock begins to run. Moreover, the "final" decision provisions of the statute mirror the "final" judgment provision of the Massachusetts Rules of Civil Procedure, which likewise permit appeals only from "final" judgments, though it is clear that many of those "final" judgments have no force and effect until the time for appeal has expired or the appeal is resolved. See Mass.R.Civ.P. 54(a), 54(b), & 62(d), 365 Mass. 820, 829 (1974), & 62(a), as amended, 423 Mass. 1409 (1996). The well-established appellate structure[9] contained in the rules cannot have been unfamiliar to the Legislature. In that regard, it is noteworthy that c. 58A, § 13, as amended through St. 1998, c. 485, § 2, ends with the following two sentences:

> "For want of prosecution of an appeal in accordance with the provisions of this section the board, or, if the appeal has been entered in the appeals court, a justice of that court, may dismiss the appeal. Upon dismissal of an appeal, the decision of the board shall thereupon have full force and effect."

If, as the defendants suggest, the board's decision were effective upon its issuance, we would have to conclude that the last sentence was unnecessary surplusage. That is the kind of conclusion we almost never reach, see, e.g., *Ropes & Gray LLP* v. *Jalbert*, 454 Mass. 407, 412 (2009) ("A statute should be construed so as to give effect to each word, and no word shall be regarded as surplusage"), and we do not reach it here.

---

[9]That structure existed long before the current rules were adopted. See, e.g., *Russia Cement Co.* v. *Le Page Co.*, 174 Mass. 349, 354 (1899) ("The phrase 'final judgment' has two meanings. It may indicate the judgment which, if not reversed or modified, will end the litigation in which it is entered, but which may be reversed or modified by a superior tribunal, and which therefore gives to the party aggrieved the right to invoke the action of the higher court. The phrase may also mean that judgment which in fact does end the litigation, by an order of the court in which the cause was begun, or of some higher court to which it is carried, entered in the cause itself, and by virtue of the process by which the suit was commenced"). Moreover, the Legislature's express reference to the Rules of Appellate Procedure in c. 58A, § 13, suggests that it was familiar with the framework for appeals the Rules of Civil Procedure contain.

The judgment of the Superior Court is vacated, and the case is remanded for entry of a judgment declaring that the assessments the defendants made on August 7, 2009, were premature and that those assessments and the resulting tax bills are invalid.[10]

*So ordered.*

---

[10]The board's statement in its decision that the defendants were "authorized to assess additional taxes . . . based on the increases to the [commissioner's] valuation established by the Board" does not alter our analysis. That authorization, like the rest of the board's decision, became effective only when the decision was final.