NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1020                                          Appeals Court

  VEOLIA ENERGY BOSTON, INC.  vs.  BOARD OF ASSESSORS OF BOSTON.

                          No. 17-P-1020.

       Suffolk.     September 6, 2018. - March 8, 2019.

          Present:  Vuono, Agnes, & Henry, JJ.


Taxation, Personal property tax:  abatement, Appellate Tax
     Board:  jurisdiction.  Practice, Civil, Abatement,
     Dismissal.  Notice, Timeliness.


     Appeal from a decision of the Appellate Tax Board.


     Kathleen S. Gregor (Erin R. Macgowan also present) for the
taxpayer.
     Anthony M. Ambriano for board of assessors of Boston.


     VUONO, J.  The plaintiff, Veolia Energy Boston, Inc.

(Veolia), appeals from an adverse decision of the Appellate Tax

Board (tax board).  The sole issue is whether the tax board had

jurisdiction over Veolia's appeal from the denial of its

application for abatement of personal property tax assessed for

fiscal year 2015.  We conclude that because Veolia failed to

timely file a valid abatement application with the board of

assessors of Boston (assessors), as required by G. L. c. 59,
§ 59, the tax board lacked jurisdiction and properly dismissed
Veolia's appeal.

Background.[1]  Veolia operates a steam manufacturing and
distribution system that provides thermal energy to customers in
the city of Boston (city).[2]  The system consists of boilers, a
network of pipes, and appurtenant equipment located throughout
the city.  The dispute between the parties began in 2014 when,
for the first time, Veolia was assessed a personal property tax
(approximately $2 million) on its machinery and equipment.
Veolia timely filed a valid application for abatement with the
assessors on February 3, 2014, pursuant to G. L. c. 59, § 59
(§ 59 or statute).[3]  Veolia argued that it was exempt from paying

---

[1] The procedural history and facts are taken from the tax
board's findings of fact and report promulgated on May 17, 2017.
We include additional undisputed facts from the tax board's
findings of fact and report issued in connection with Veolia's
abatement application for fiscal year 2014 solely for the
purpose of providing context.

[2] The system converts chemical energy from natural gas and
fuel oil into high-pressure steam and then distributes the steam
to approximately 250 commercial, healthcare, government,
institutional, and hospitality customers who use the steam for
various purposes, including power generation, sterilization,
heating, and cooling.  Veolia operates a similar network in
Cambridge.

[3] General Laws c. 59, § 59, provides in relevant part that a
person aggrieved by the taxes assessed upon him "may . . . apply
in writing to the assessors, on a form approved by the
commissioner, for an abatement thereof, and if they find him

personal property tax on all manufacturing machinery, including all components of its systems, because it was classified as a manufacturing corporation by the Commissioner of Revenue (commissioner).[4]  The assessors denied the application for abatement, and Veolia appealed to the tax board.  Ultimately, the tax board concluded that the property at issue was exempt from taxation, as Veolia had claimed.  Consequently, the tax board reversed the assessors' decision and granted a full abatement of the tax Veolia paid in fiscal year 2014.[5]

Meanwhile, Veolia again was assessed a tax for fiscal year 2015, approximately $2.2 million, on the same machinery and

---

taxed at more than his just proportion . . ., they shall make a reasonable abatement."

[4] General Laws c. 59, § 5, Sixteenth (3), exempts from taxation the following:  "In the case of . . . a manufacturing corporation, . . . all property owned by the corporation . . . other than real estate, poles and underground conduits, wires and pipes."

[5] The tax board issued its decision concerning Veolia's appeal from the denial of its request for abatement in fiscal year 2014 on November 16, 2016.  The assessors then requested findings of fact and a report under G. L. c. 58A, § 13, and 831 Code Mass. Regs. § 1.32 (2007), which the tax board subsequently issued on June 5, 2018.  The assessors have filed a timely notice of appeal from that decision.  Because the case is under appeal, the decision of the tax board granting a tax abatement for fiscal year 2014 is not final.  See Verizon New England Inc. v. Assessors of Newton, 81 Mass. App. Ct. 457, 461 (2012), quoting State Tax Comm'n v. Assessors of Haverhill, 331 Mass. 306, 309 (1954) ("until the time for appeal from a [tax] board decision expired or the court decided any pending appeal, 'there has been no final determination by the [tax] board'").

equipment.  Veolia timely paid the tax due in quarterly installments on July 25, 2014, October 14, 2014, January 21, 2015, and April 20, 2015.  Each payment was accompanied by a letter addressed to the "City of Boston Collector of Taxes" (tax collector).  The letters are typed on Veolia's stationery and signed by Steven Weafer, Veolia's vice-president of finance.  All four letters include the following sentence:

"Please note that Veolia Energy Boston, Inc. has filed a Petition under Formal Procedure with the Appellate Tax Board [for fiscal year 2014], the outcome of which may affect the tax assessment for this period and others."

Pursuant to § 59, the deadline for filing an abatement application for fiscal year 2015 was February 6, 2015.  On May 14, 2015, Weafer received a voice mail message from Charles Claybaugh, who is identified in the record as an employee of the assessors' office, advising him that the assessors "[had] no record of a Fiscal '15 abatement [application] being filed."  Weafer contacted Claybaugh and expressed his "belief that the 2014 Petition [application for abatement] would apply to all tax years, including [fiscal year] 2015."  Thereafter, on May 28, 2015, counsel for Veolia filed an abatement application with the assessors for fiscal year 2015 on State Tax Form 128, a form approved by the commissioner.  The assessors denied the application as untimely filed, and Veolia appealed to the tax board.

A hearing was held before the tax board on October 5, 2015.[6] Prior to the hearing, the assessors filed a motion to dismiss Veolia's appeal on the ground that the tax board lacked jurisdiction because Veolia's abatement application had not been filed within the time period prescribed by the statute. Veolia opposed the motion, contending that its letter to the tax collector dated January 21, 2015, which accompanied its third quarterly tax payment, constituted a valid abatement application because it had provided notice to the assessors of Veolia's challenge to the assessed tax and had incorporated by reference the application for abatement for fiscal year 2014. According to Veolia, the abatement application filed on May 28, 2015, was merely a "protective" filing because, if its then-pending appeal from the assessors' denial of its fiscal year 2014 abatement application was successful (as turned out to be the case at the tax board, but as to which judicial review remains pending, see note 5, supra), the tax board's decision that the property is exempt from taxation would be binding on subsequent tax assessments.

The tax board agreed with the assessors and dismissed Veolia's appeal. The tax board reasoned that Veolia had failed to satisfy the statute's jurisdictional requirements in three

---

[6] See G. L. c. 59, §§ 64, 65.

respects, any one of which would warrant dismissal of its appeal. First, the tax board found that Veolia's letter dated January 21, 2015, to the tax collector did not constitute an "[application] in writing to the assessors." Second, that letter was not "a form approved by the commissioner." And third, while the abatement application filed on May 28, 2015, was submitted on State Tax Form 128, a form approved by the commissioner, it was nonetheless filed more than three months after the deadline of February 6, 2015.

Discussion. Our review of a decision of the tax board is deferential. "We will not modify or reverse a decision of the [tax] board if the decision is based on both substantial evidence and a correct application of the law." Boston Professional Hockey Ass'n, Inc. v. Commissioner of Revenue, 443 Mass. 276, 285 (2005). "Although the proper interpretation of a statute is for a court to determine, we recognize the [tax] board's expertise in the administration of tax statutes and give weight to the [tax] board's interpretations." Adams v. Assessors of Westport, 76 Mass. App. Ct. 180, 183 (2010), quoting Raytheon Co. v. Commissioner of Revenue, 455 Mass. 334, 337 (2009). In this case, we agree with the reasoning of the tax board in all material respects and discern no basis for disturbing its decision.

It is well settled that the remedy of abatement is a statutory one, and if any of the statute's requirements are not complied with, the remedy is lost.  "Since the remedy by abatement is created by statute the board of tax appeals has no jurisdiction to entertain proceedings for relief by abatement begun at a later time or prosecuted in a different manner than is prescribed by the statute."  Assessors of Boston v. Suffolk Law Sch., 295 Mass. 489, 492 (1936).  The court's decision in Suffolk Law Sch. has been consistently cited with approval.[7] See, e.g., Aetna Life Ins. Co. v. Commissioner of Corps. & Taxation, 323 Mass. 657, 659-661 (1949) (tax board had no jurisdiction to entertain application for abatement of excise tax where original application was not on form approved by commissioner); Assessors of Brookline v. Prudential Ins. Co., 310 Mass. 300, 308 (1941) (abatement "application is a constituent part of the statutory remedy" and "is the method by

_____

[7] The primary obstacle to jurisdiction in Suffolk Law Sch. was the taxpayer's failure to submit an abatement application in the prescribed form.  The taxpayer's application was "typewritten on a plain sheet of paper," as opposed to a form approved by the commissioner.  Suffolk Law Sch., 295 Mass. at 494-495.  Veolia attempts to distinguish the present case on the ground that the letters that accompanied its quarterly tax payments incorporated by reference the prior valid abatement application submitted in 2014.  We are not persuaded.  The letters upon which Veolia relies are not "notice" letters, as Veolia suggests.  On the contrary, they are more accurately described as cover letters and, in any event, as discussed infra, because the letters were not sent to the assessors, they did not satisfy the statute's requirements.

which the statutory proceeding is begun"; it "must be begun by a proper application within the period fixed by the statute"); Old Colony R.R. v. Assessors of Quincy, 305 Mass. 509, 511-512 (1940) ("the time within which the application [for abatement] is to be made is not a mere matter of limitation but is an integral part of the right, and the failure to apply within the prescribed time destroys the right").  See also MacDonald v. Assessors of Mashpee, 381 Mass. 724, 725-726 (1980) (tax board had jurisdiction because, although "failure to make a timely application for an abatement would be fatal," taxpayer timely filed application for abatement that contained information sufficient to satisfy statute's requirements).

Veolia, as the taxpayer seeking relief, had the burden of demonstrating that the tax board had jurisdiction over its appeal.  See Children's Hosp. Med. Ctr. v. Assessors of Boston, 388 Mass. 832, 841 (1983).  Veolia, therefore, was required to show that it had complied with the statute by filing an application for abatement 1) on or before February 6, 2015; 2) to the assessors; and 3) on a form approved by the commissioner.

Veolia asserts that each of the letters that accompanied its first three quarterly tax payments for fiscal year 2015 satisfied the statute's prerequisites because they were received

before the deadline of February 6, 2015,[8] and put the assessors on notice of its claim that the assessed tax was unlawful. However, while the letters upon which Veolia relies were sent before the statutory deadline, Veolia failed to demonstrate that the letters were sent to the assessors as required by the statute. As previously noted, all four letters were sent to the tax collector.[9] "[T]he rule is long entrenched that applying for an abatement connotes placing the application in the hands of the authority which is to consider it." Tilcon Mass., Inc. v. Commissioner of Revenue, 30 Mass. App. Ct. 264, 265 (1991).

Furthermore, none of the letters satisfied the statute's requirement that an application for abatement be submitted on a form approved by the commissioner. It matters not, as Veolia claims, that the letters contain information similar to that required by the approved form. Adherence to the statutory

---

[8] Veolia does not argue that the application it filed on May 28, 2015, was timely. Instead, Veolia claims that it "relates back" to the prior letters submitted with its quarterly tax payments.

[9] Veolia points to the fact that the letter dated October 14, 2014, which accompanied its second quarterly tax payment, bears a stamp indicating receipt by the "assessing dept." and claims that the presence of the stamp proves that the assessors received it. Although the board made no finding to this effect, the assessors conceded at oral argument that the letter had been received by them. However, even if the letter, which was addressed to the tax collector, was delivered to the assessors, Veolia's position is not improved because, as discussed infra, the letter is not a form approved by the commissioner.

prerequisites is essential "to effective application for abatement of taxes and to prosecution of appeal from refusals to abate taxes." New Bedford Gas & Edison Light Co. v. Assessors of Dartmouth, 368 Mass. 745, 747 (1975). We therefore agree with the conclusion reached by the tax board that Veolia did not comply with the statute and, as a result, that it failed to demonstrate that the tax board had jurisdiction over its appeal.

Lastly, Veolia claims that by dismissing its appeal, the tax board failed to conform to the Federal and State due process protections to which it is entitled. According to Veolia, the statute's requirements should be construed liberally and in favor of the taxpayer, particularly when the taxpayer makes a good faith effort to comply. The flaw in this argument is that our cases do not recognize a good faith exception to compliance with the statute's mandatory requirements.[10] Veolia also argues that the tax board's narrow interpretation of the statute's jurisdictional requirements deprived it of a fair opportunity to pursue a remedy. We disagree. Veolia had the same remedy available to it in 2015 as it did in 2014, when it filed a

---

[10] "The lack of an application in the statutory form is not excused by the good faith of the taxpayer, or acceptance by the assessors of an application in some other form nor by the fact that the assessors are not inconvenienced or misled." Suffolk Law Sch., 295 Mass. at 494. In determining whether the application meets the requirements of the statute, such facts may be considered material, however, they "do not excuse clear noncompliance with these requirements." Id.

timely, valid abatement application.  Veolia lost that remedy in 2015 through its failure to follow the statutory procedures and not because it was deprived of an opportunity to be heard.

In reaching our conclusion, we acknowledge that the result is a harsh one for Veolia, and will be particularly severe if the tax board's decision that the tax levied on its personal property for fiscal year 2014 was assessed unlawfully is affirmed.  However, neither the statute, nor the relevant case law, permit a different conclusion.  On the contrary, the Legislature has given no indication that cases interpreting the jurisdictional requirements of § 59, which was amended to include the present language in 1933, was not in accordance with its intention.

Appellate attorneys' fees and costs.  The assessors argue that they are entitled to reasonable attorney's fees and double costs because Veolia has pursued an insubstantial and frivolous appeal.  See Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979).  The request is denied.

Decision of Appellate Tax
Board affirmed.

HENRY, J. (concurring).  I reluctantly agree with the opinion of the court that we are constrained by existing case law to rule that the Appellate Tax Board lacked jurisdiction over Veolia Energy Boston, Inc.'s (Veolia) appeal from the denial of its application for abatement of personal property tax assessed for fiscal year 2015.  I write separately to underscore how harsh this ruling is:  had Veolia filed the form approved by the Commissioner of Revenue (commissioner), the board of assessors of Boston (assessors) would have received no more information than Veolia's October 14, 2014, letter already provided, and yet its claim is barred.

As discussed in the court's opinion, G. L. c. 59, § 59, delineates specific requirements for a proper tax abatement application, to which Assessors of Boston v. Suffolk Law Sch., 295 Mass. 489, 492 (1936) (Suffolk Law), requires strict adherence.  While we are constrained to follow Suffolk Law, it is worth noting that that case involved an initial challenge to a taxation decision, not a subsequent challenge in a subsequent year.  Id.  In other contexts, the Supreme Judicial Court has found discretion around the edges of a seemingly rigid statutory requirement.  See generally Beres v. Board of Registration of Chiropractors, 459 Mass. 1012, 1013 (2011) (applicable statute required petition to be filed in Supreme Judicial Court but, where action was filed in wrong court, Supreme Judicial Court

remanded with instruction to exercise discretion in considering transfer of matter).  The Supreme Judicial Court could apply similar discretion in this case, particularly where the correct form was filed in the first instance.

Veolia's October 14, 2014, letter was received by the assessors in a timely manner.  See ante at ___ n.9.  That letter notified the assessors that Veolia challenged the 2015 fiscal year tax assessment and that it was doing so for the same reason already being litigated by Veolia against the assessors for the prior fiscal year.  That litigation commenced after Veolia filed a challenge to the tax on the right form for fiscal year 2014. It is undisputed that there is no substantive difference between the forms approved by the commissioner for fiscal years 2014 and 2015.  Veolia's abatement argument is a challenge to whether the property at issue can be taxed at all, not to the rate of taxation or the value of the property.  In other words, Veolia is raising the exact same challenge for fiscal year 2015 that it made for fiscal year 2014, and the assessors had timely notice of that fact through the October 2014 letter and reference to the fiscal year 2014 challenge.  Indeed, the assessors admitted at oral argument that it would have been sufficient for Veolia to submit a copy of its fiscal year 2014 form stapled to a blank fiscal year 2015 form.

Unless and until the Legislature amends the statute or the Supreme Judicial Court applies its discretion, a cautious taxpayer will file the designated form each and every year while the first abatement action is pending, after which each subsequent abatement application will be stayed or joined to the original proceeding.  This process will be repeated year after year until the original proceeding has concluded and its result will cascade through the subsequent tax years.  These additional filings are unnecessary and will result in multiple actions -- here five and counting -- when one could suffice.